so paid in satisfaction of the debt due the estate. This would seem to be an idle ceremony. In either case the true point of inquiry would be the propriety and bona fides of the expenditure, and the reasonableness of the amount paid."

The order should be.reversed, with $10 costs and disbursements, and motion of defendant granted, with $10 costs, to be paid out of the assigned estate. All concur.

(8 App. Div. 409)

GREENE v. NIAGARA COUNTY et al.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

1. TRUSTS—SECURITY FOR LOAN AND TRUST FUNDS—PUBLIC OFFICER.
    Under an agreement between a county treasurer and a bank, pursuant to which the treasurer lends county funds to the bank, and the bank transfers to the treasurer a note and draft in payment of or as security for the loan, the treasurer takes the note and draft for the purpose of restitution of the money illegally loaned, and he cannot divert them to any other use without the consent of the county.

2. COUNTY TREASURER—BORROWING MONEY—OVERDRAWING BANK ACCOUNT.
    A bank which permits a county treasurer to overdraw his account thereby lends money to the treasurer individually, and it has no claim against the county for the amount of the overdraft.

Appeal from judgment on report of referee.

Action by William C. Greene, as receiver of the Merchants' Bank of Lockport, against the county of Niagara and others, to establish the claim of plaintiff to recover a note. and draft, or the proceeds thereof, to an amount sufficient to satisfy the claim of the Merchants' Bank of Lockport against one John J. Arnold, for moneys advanced by said bank to said Arnold, at his request, as treasurer of the county of Niagara, to pay obligations owing from him as treasurer to said county. There was a judgment in favor of plaintiff, and defendant county appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

John H. Leggett, for appellant.

David Millar, for respondent.

ADAMS, J. The established facts in this case disclose that upon the 16th day of October, 1893, the plaintiff was duly appointed receiver of the Merchants' Bank of Lockport, and that upon the 19th of January, 1894, he took possession of the assets and property of the bank, and still retains the same in his custody; that prior to March 1, 1890, the Merchants' Bank was known as the First National Bank of Lockport, but upon that date it was changed from a national to a state organization; that, for nearly six years prior to the appointment of such receiver, one John J. Arnold was the treasurer of Niagara county, and had deposited the county funds in either the Merchants' Bank or the First National Bank, of each of which he was the cashier; that, at the time the bank was changed from a national to a state organization, it held certain commercial

paper which, for some reason, it was thought necessary or desirable to retire, and which amounted to $12,000 or $15,000. Certain officers of the bank thereupon applied to Arnold to loan them, from the county funds, a sufficient sum to take up this paper, which application was granted. Thereafter J. S. Helmer and J. H. Helmer, who were, respectively, the president and vice president of the bank, delivered to Arnold their note for $4,669.31, payable to his order; and later on J. H. Helmer drew his certain draft for $5,130.70, upon Charles L. Easton, of Chicago, Ill., payable to the order of the Merchants' Bank of Lockport, which draft was also delivered to Arnold, and that, together with the note, was accepted by him as security for, or in payment of, the moneys which the bank had theretofore borrowed of him. This note and draft were placed by Arnold in a pocketbook containing valuable papers belonging to the county of Niagara, which thereafter, and upon the 10th of October, 1893, was, with its contents, delivered to the defendant Ellsworth. In 1893, and prior to the 11th of October in that year, Arnold had been permitted by the bank to overdraw his account as treasurer to the extent of $6,428.83; and upon the last-mentioned date, when the insolvency of the bank had become pretty well established, Arnold was induced to execute an assignment to it of the Helmer note and Easton draft, which were subsequently paid to the defendant Ellsworth, the avails thereof being held by him until it could be determined to whom they belonged. This action is brought upon the theory that the note and draft in question were assigned to the bank as security for Arnold's overdraft, and that their avails, or so much thereof as may be necessary for that purpose, should be applied in payment of such overdraft; and the learned referee has found, as a conclusion of law, that the plaintiff, as receiver, is entitled to enough of such avails to make good the overdraft and the interest thereon, the remainder thereof being awarded to the defendant the county of Niagara.

We are unable, after giving to this case a most careful and critical examination, to reach a conclusion which harmonizes with that of the learned referee. It is, of course, too plain for controversy, and no one has been heard to say to the contrary, that the original transaction between Arnold and the bank, which resulted in the loan of a sum of money from the former to the latter sufficient in amount to retire the objectionable paper, was, to put it very mildly, without authority, and in violation of Arnold's duty as treasurer of the county of Niagara. The money loaned, confessedly, belonged to the county, and not to him; and he had no more right to loan it to the bank than he had to invest it in stocks. This the officers of the bank doubtless knew, as well as he, and both the parties must have been conscious that the entire transaction was illegal, if not criminal, in its character. Now, this fact, while it deprives the plaintiff, who, so far as this action is concerned, stands precisely where the bank would have stood if no receiver had been appointed, from invoking the aid of a court of equity on his attempt to obtain any benefit from a transaction which was clearly dishonest, is, nevertheless, one which should make the court anxious and alert

to mold the relief to be awarded so as to adapt it to the circumstances of the case, and prevent, if possible, any harm or loss resulting to the county of Niagara, whose funds have been thus improperly diverted. 2 Story, Eq. Jur. § 1258; Perry, Trusts, § 829; Lench v. Lench, 10 Ves. 511; Lewis v. Madocks, 17 Ves. 56.

The view, therefore, which we are inclined to take of the matter is that notwithstanding the bank borrowed the money of Arnold personally, and transferred the note and draft to him individually, yet inasmuch as it was well known to the officers who procured the loan that the moneys belonged to the county, and not to Arnold, the debt must be treated as one owing to the county; and that, consequently, when Arnold took the note and draft, either in payment of or as security for the money thus loaned, he took them impressed with a lien and trust, for the purpose of recompense and restitution of the moneys illegally loaned, and could not divert them to any other use without the consent of the county. In other words, the note and draft represented and stood in the place of so much money which had been virtually embezzled; and, as the money belonged to the county, so did the securities which represented it. Newton v. Porter, 69 N. Y. 133; Ferris v. Van Vechten, 73 N. Y. 113; Cook v. Tullis, 18 Wall. 332. In this view of the case, it becomes unimportant whether or not the note and draft were delivered to the defendant Ellsworth, to be held by him in trust for the county, because Arnold had no right to execute the assignment of October 11th, and the bank acquired no additional right in consequence of its execution.

There is, however, another reason why we think the avails of this note and draft should not be employed in the manner directed by the learned referee, which is that the overdraft in question was in the nature of a loan to Arnold individually. He, as treasurer, had no right to borrow money upon the credit of the county of Niagara; and, when the bank allowed him to overdraw his account, it was upon his individual responsibility. Of course, if Arnold had in good faith used his personal credit to obtain moneys to pay the obligations of the county, it is not altogether improbable that the county would be required to reimburse him therefor. But, as between him and the bank, it was wholly a personal matter, in which the county had no concern. Again, in a proper case, and under certain conditions, it is not inconceivable that a court of equity might deem it advisable to apply the avails of the note and draft to the payment of the overdraft; but, before doing so, it would, at least, require it to be established beyond peradventure that the same was in all respects bona fide; that the county had received the full benefit of it; and that, as between Arnold and the bank, there were no existing equities to be considered and adjusted. But the facts here presented do not establish a case for the application of any such equitable principle, and we consequently think the learned referee reached an erroneous conclusion, which makes it necessary that a new trial of the case should be had.

Judgment reversed. New trial ordered, with costs to abide the event. All concur.